UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

PHILLIP CRUM,

    Plaintiff,

v.

ESTATE OF VICKI C. MAYBERRY, et al.,

    Defendants.

Civil No. 14-84-ART

**MEMORANDUM OPINION AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Phillip Crum seeks tort damages from his late sister and former guardian, Vicki Mayberry, and her husband, Mark Mayberry. Crum alleges that the couple stole funds from his bank account while Vicki Mayberry acted as his guardian and managed his financial affairs. But Crum's family ties are not enough to allow him to bring suit in a Kentucky court against his brother-in-law Mark Mayberry in his individual capacity.[1] Because Mayberry's conduct does not create sufficiently strong connections to the Commonwealth of Kentucky to allow this Court to exercise jurisdiction over him, Crum must look to another forum to pursue claims against his out-of-state relation.

## BACKGROUND

In 2003, the Martin County District Court adjudged Phillip Crum to be wholly disabled. R. 23 ¶ 2. The court appointed a series of guardians to manage the payments Crum received when he settled his personal injury claims. *Id.* ¶¶ 2, 4, 6. The last of these

---

[1] Crum also names Mark Mayberry as a defendant in his capacity as executor of the estate of Vicki Mayberry. *See* R. 23.

guardians was Crum's sister, Vicki Mayberry. *Id.* ¶ 6. Although Vicki Mayberry resided in Michigan, she accepted the guardianship appointment from the Kentucky court and posted a $10,000.00 bond. *Id.* ¶¶ 6, 7. Crum claims, however, that while Vicki Mayberry acted as his guardian, she and her husband Mark Mayberry withdrew funds from Crum's bank accounts and improperly used the money to satisfy their own personal financial obligations. *Id.* ¶¶ 26–50.

Crum initially filed and amended his complaint against the Mayberrys in state court. *See* R. 1-1, 1-2 (State court complaint). After removing the case, Mark Mayberry promptly moved to dismiss the amended complaint against him in his individual capacity for lack of personal jurisdiction. *See* R. 3; R. 4. The Court permitted Crum to amend his complaint in response to the motion to dismiss. The Court also explained that Crum may establish facts in support of personal jurisdiction over Mark Mayberry at an evidentiary hearing if his second amended complaint survives a motion to dismiss. R. 21; R. 22 (granting leave to file an amended complaint). The Court subsequently construed Mark Mayberry's answer to the second amended complaint in part as a motion to dismiss and ordered Crum to respond to the defenses under Rule 12(b). *See* R. 26. In his briefs, Mark Mayberry only seeks to dismiss the action against him in his individual capacity for lack of personal jurisdiction, so the Court just reaches that claim. *See* R. 28 (referring to the arguments raised in the memorandum and reply brief in support of the original motion to dismiss for lack of personal jurisdiction).

## DISCUSSION

The Court may only adjudicate claims against Mark Mayberry by exercising either general jurisdiction or specific jurisdiction over him. To exercise general jurisdiction, the Court must find that Mayberry's contacts with Kentucky are of such a "continuous and

systematic nature" that he could be sued for any conduct—not just for actions related to his contacts with Kentucky. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). To exercise specific jurisdiction over Mark Mayberry, this Court must apply a two-step test prescribed by Kentucky law. *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994) (noting that courts must apply the law of the state in which they sit in order to determine whether there is personal jurisdiction over a defendant). First, the Court must find that Mayberry's conduct falls under the terms of Kentucky's long-arm statute. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011); *see also* Ky. Rev. Stat. Ann. § 454.210. Only then may the Court assure itself that exercising personal jurisdiction over the non-resident Mayberry will not offend his federal due process rights. *Caesars*, 336 S.W.3d at 57. As discussed below, Crum does not set forth in his complaint sufficient facts to make the required prima facie showing that this Court has jurisdiction—general or specific—over Mark Mayberry. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (specifying that a plaintiff must only make a prima facie showing that personal jurisdiction exists in response to a motion to dismiss for lack of personal jurisdiction).

I. **Mark Mayberry Does Not Possess the Type of Extensive Contacts to Kentucky Necessary for General Jurisdiction.**

The Court may exercise general jurisdiction over Mark Mayberry if he maintains the type of "pervasive" connections to Kentucky that "approximates physical presence." *See Bird*, 289 F.3d at 874 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)). To show that Mayberry has strong connections to Kentucky, Crum claims that Mayberry accompanied his wife on her trips to Kentucky to manage Crum's

3

estate over several years. *See* R. 23 ¶¶ 52–53. Crum also states that Mayberry inherited real property in Kentucky. R. 27 at 6.

But Mark Mayberry's property ownership and travel to the jurisdiction cannot, as a matter of law, establish the type of contacts that this Court needs to exercise general jurisdiction over him for a suit unrelated to his property or travel. *See Conn v. Zakharov*, 667 F.3d 705, 718–19 (6th Cir. 2012) (holding as a matter of federal due process that a defendant's ownership of property in a state and annual non-business travel to the forum did not suffice to establish general jurisdiction); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 794 (6th Cir. 1996) (citing *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1045–46 (2d Cir. 1991) (standing for the proposition that thirteen trips over the course of eighteen months did not constitute "continuous and systematic" contacts to the forum state). The *Conn* court further noted that a defendant's travel is unlikely to establish the type of contact necessary for general jurisdiction where he does not engage in business in the forum. 667 F.3d at 719. And Mark Mayberry—unlike his wife— was not appointed as Crum's guardian and therefore did not travel to Kentucky to conduct any official business related to managing Crum's estate. Because Crum failed to set forth facts that demonstrate that Mark Mayberry had "continuous and systematic" contacts with Kentucky, he does not establish a prima facie case for general jurisdiction. *Conn*, 667 F.3d at 711.

## II. Vicki Mayberry's Actions Do Not Provide Grounds for Asserting Specific Jurisdiction over Mark Mayberry as an Individual.

Crum attempts to establish Mark Mayberry's contacts with Kentucky through the acts of his spouse. Specifically, Crum claims that while Vicki Mayberry was his Court-appointed

4

guardian, she "persistently wrote checks" drawing from Crum's bank account to fulfill her and Mark Mayberry's financial obligations. *See* R. 23 ¶¶ 26–39. But Vicki Mayberry's conduct has no bearing on whether Mark Mayberry is subject to suit in the Commonwealth. Mark Mayberry must *himself* engage in actions that create a substantial connection with the forum: He cannot be subject to suit as a result of the "unilateral activity of another party or third person." *Air Prods.*, 503 F.3d at 551; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *see also Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (noting that a defendant should not be "haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person").

Subjecting Mark Mayberry to suit in this Court on account of Vicki Mayberry's conduct is the type of "unilateral activity" that courts have found insufficient to establish territorial jurisdiction. *See Mahler v. Startari*, 142 F. App'x 839, 841–42 (6th Cir. 2005) (determining that the court could not exercise jurisdiction over a director of a company based on the actions of a co-director); *Air Prods.*, 503 F.3d at 551 (upholding the exercise of personal jurisdiction because the defendants' contacts to the state were not "simply the result of unilateral activity" on the part of a third party). So Crum cannot rely on the facts in his complaint alleging that Vicki Mayberry "wrote checks" for her and Mark Mayberry's benefit to "hale" Mark Mayberry into this Court. *See Schneider*, 669 F.3d at 701.

Crum alternatively argues that the Court should ascribe Vicki Mayberry's tortious conduct to Mark Mayberry for the purpose of determining jurisdiction because Vicki Mayberry acted as Mark Mayberry's "agent." R. 27 at 4. The Sixth Circuit has not

determined whether the acts of a co-defendant in furtherance of a common purpose can subject a non-resident defendant to personal jurisdiction under a long-arm statute. *See Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981) (neither adopting nor rejecting the so-called agency or conspiracy theory of *in personam* jurisdiction as a general principle of law in the circuit). Yet, even if the Court embraced this theory for establishing personal jurisdiction, Crum would still not succeed in bringing his claims against Mark Mayberry. Crum does not plead any facts in his complaint tending to show that Vicki and Mark Mayberry were in a conspiracy, that Mark Mayberry agreed to join the conspiracy, or that Vicki Mayberry acted in furtherance of the conspiracy within the forum's boundaries. *See id.* at 1237 (holding that mere allegations of conspiratorial activities with tortious consequences in the forum state are insufficient to support jurisdiction under the long-arm statute in the absence of some "minimal factual showing" of the defendant's participation in the conspiracy); *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592, 599 (E.D. Ky. 2006) (quoting *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 140 (D.D.C. 2004) (noting that "mere speculation" that a conspiracy exists or that non-resident defendants are co-conspirators is insufficient to meet the prima facie burden of showing jurisdiction). Because the complaint wholly lacks facts indicating that Mark Mayberry authorized Vicki Mayberry to act on his behalf, Crum cannot establish specific personal jurisdiction over Mark Mayberry through an agency or conspiracy theory.

**III. Crum's Complaint Fails to Establish that Mark Mayberry Committed a Tort in a Manner that Would Allow the Court to Exercise Specific Personal Jurisdiction Over Him Under Kentucky's Long-Arm Statute.**

Crum next claims that Mayberry "persistently made electronic debits" from Crum's account to satisfy his personal financial obligations. *See* R. 23 ¶¶ 40–50. He also alleges

that Mayberry repeatedly traveled to Kentucky with his wife when she transacted the business of Crum's estate. *Id.* ¶ 52. From these facts, Crum claims that he can bring his suit against Mayberry in a Kentucky court.

The Due Process Clause of the Constitution permits the Court to exercise specific jurisdiction over a defendant who acts from outside a state to injure one of its residents. *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (noting that "even a single act by a defendant" that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction "without offending due process"). But that is not the controlling inquiry. Kentucky law requires courts to first find that a defendant's conduct falls within the plain language of the Commonwealth's long-arm statute. *Caesars*, 336 S.W.3d at 57. Only then can a court analyze whether suing the defendant in Kentucky comports with due process.

Crum identifies two provisions of the long-arm statute as relevant: Sections 454.210(2)(a)(3) (causing tortious injury by act or omission in the Commonwealth) and 454.210(2)(a)(4) ("causing tortious injury . . . by an act or omission outside this Commonwealth if the defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . this Commonwealth"). But even taking as true the facts in the complaint and attached affidavits, the Court cannot exercise jurisdiction over Mark Mayberry under these provisions for three reasons: There are no facts indicating that Mark Mayberry (1) committed torts while in Kentucky, (2) transacted business with or derived revenue from Crum's estate, or (3) engaged in a "persistent course of conduct" that gave rise to the particular injuries at issue. Accordingly, Crum fails to establish the first of two steps required to find specific personal jurisdiction.

7

### A. The Complaint Does Not Indicate That Mark Mayberry Committed Torts in Kentucky.

Even if Mark Mayberry only committed torts while outside Kentucky, Crum can still sue him in Kentucky courts without offending his due process rights. *See Calder v. Jones*, 465 U.S. 783 (1984) (finding that committing a single intentional tort directed toward the state provides sufficient contact with the forum to allow a court to exercise jurisdiction over a defendant); *see also Neal*, 270 F.3d at 331–32 (6th Cir. 2001) (holding that an out-of-state defendant who made fraudulent statements by phone and fax machine from outside the state was subject to the jurisdiction of the state court). And this makes sense. After all, Mayberry should not escape liability for having used sophisticated technology outside Kentucky to commit a tort that he could have easily committed while in Kentucky. Courts have long recognized this principle, finding the due process clause to be sufficiently flexible to permit suits against defendants who commit torts remotely with the aid of new technology. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted [to exercise jurisdiction].").

But whether the Due Process Clause permits Crum to bring an action against Mayberry is not dispositive. The Kentucky Supreme Court recently construed the state long-arm statute to have power independent of the Constitution's Due Process Clause. *See Caesars*, 336 S.W.3d at 57. The Court must accordingly examine the plain language of the statute to see whether Kentucky elects to extend its jurisdiction to out-of-state defendants who wrongfully withdraw money from Kentucky banks. Only then can the Court analyze

8

whether Kentucky's exercise of jurisdiction comports with the Constitution's Due Process Clause.

The Kentucky long-arm statute only reaches defendants who cause injury by "an act or omission in this Commonwealth." Ky. Rev. Stat. § 454.210(2)(a)(3). Kentucky courts routinely find that a defendant must be present in the Commonwealth when he starts an action that causes a tort in order for section 454.210(2)(a)(3) to apply. In *Pierce v. Serafin*, the Kentucky Court of Appeals found that a defendant did not commit an act in the Commonwealth when he sent a letter from outside the state that contained statements that caused injury in Kentucky. 787 S.W.2d 705 (Ky. Ct. App. 1990). Rather, the court found that the defendant merely caused a "consequence" in Kentucky. *Id.* at 706. The Kentucky Court of Appeals reaffirmed *Pierce*'s distinction between tortious actions and consequences in *Powers v. Park*, 192 S.W.3d 439, 443–44 (Ky. Ct. App. 2006). And cases interpreting the Kentucky long-arm statute (and analogous long-arm statutes) find that it is the first action a defendant takes that defines where he committed a tort. *See Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930-31 (6th Cir. 1974) (interpreting an analogous provision of the Ohio long-arm statute to find that electronic communications to the state do not cause an injury in the state); *Spectrum Scan, LLC v. AGM California*, 519 F. Supp. 2d 655, 659 (W.D. Ky. 2007); *Babcock v. Anthony's LLC*, No. 3:12-CV-000307-R, 2013 WL 6036689, at *6 (W.D. Ky. Nov. 14, 2013); *Perkins v. Bennett*, No. 3:13-CV-695, 2013 WL 6002761, at *6-7 (W.D. Ky. Nov. 12, 2013); *Heinrichs v. Dunn*, No. 2:13-CV-00929, 2014 WL 3572404, at *4 (S.D. Ohio July 21, 2014) (interpreting Ohio's analogous long-arm statute).

Just as the *Pierce* court found letter-writing to be a "tort," Mark Mayberry's withdrawal of funds from Crum's account are the acts that caused Crum's injury. Yet

nowhere in his complaint or attached affidavits does Crum describe how or where Mark Mayberry acted to injure him. Crum simply states that Mark Mayberry made electronic debits from Crum's Kentucky account. Not once in the complaint's 61 paragraphs does Crum claim that any wrongful debit took place in Kentucky. This pleading defect is fatal to Crum's action under section 454.210(2)(a)(3).

The plain language of section 454.210(2)(a)(3) makes it difficult to bring cases against identity thieves or hackers who operate remotely to injure Kentucky residents. But the Kentucky legislature made its choice when it drafted the statute. The Court must respect that choice. The legislature can always expand the reach of the long-arm statute to catch additional torts, like those involving internet banking. The legislature has done so in the past; after all, the last prong of the long-arm statute specifically mentions torts committed using a "telephone solicitation" as grounds for exercising jurisdiction over a foreign defendant. *See* Ky. Rev. Stat. § 454.210(2)(a)(9). In the meantime, however, the Court has no basis to exert jurisdiction over Mark Mayberry as Crum does not claim that he committed a harmful act in Kentucky.

### B. Mayberry Did Not Solicit Business or Derive Substantial Revenue from Goods Consumed or Services Rendered Within Kentucky.

Mark Mayberry could be subject to the jurisdiction of this Court if he solicits business or gains substantial revenue from the sale of goods or services in Kentucky. Ky. Rev. Stat. § 454.210(2)(a)(4). But apart from Mark Mayberry's wrongful withdrawals, Crum does not provide facts that would allow the Court to conclude that Mark Mayberry is engaged in any type of activity—let alone a legitimate business venture or revenue-producing enterprise—in Kentucky. Despite Crum's claims to the contrary, wrongful withdrawals are not business

solicitations or sales of goods or services. *See, e.g.*, Black's Law Dictionary (9th ed. 2009) (defining solicitation as "a request or petition" or an "attempt or effort to gain business"). And when evaluating motions to dismiss, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (holding that legal conclusions "masquerading as factual allegations" will not suffice to survive a motion to dismiss). The Court therefore may disregard Crum's conclusory statements that Mark Mayberry engaged in business in and derived substantial revenue from activities in Kentucky by surreptitiously stealing funds from a bank account in the jurisdiction. So from the facts Crum pled in his complaint, Crum cannot sue Mark Mayberry in this Court under section 454.210(2)(a)(4) of the long-arm statute.

### C. Mark Mayberry Did Not Engage in a "Persistent Course of Conduct" that Gave Rise to Crum's Injury.

Kentucky courts interpret section 454.210(2)(a)(4) to require out-of-state defendants to regularly solicit or conduct business in Kentucky in order to be subject to suit within its borders. *See Powers*, 192 S.W.3d at 443. But even if a court could exercise personal jurisdiction over a defendant who engages in a non-business-related "persistent course of conduct," Mark Mayberry does not qualify. Why? Because his contacts with the forum did not give rise to the claimed injuries at issue.

Under Kentucky's long-arm statute, a plaintiff must demonstrate that (1) the defendant has the statutorily required contacts with Kentucky and (2) the cause of action arose from those very contacts. Ky. Rev. Stat. § 454.210(a)(4). Kentucky courts interpret the statute to require a close nexus between a defendant's contacts to the forum and the

11

wrongful conduct. It is not enough that the contacts to a forum are the "but for" cause of an injury in the jurisdiction. *See Caesar's*, 336 S.W.2d at 58–59.

But the injuries at issue do not arise from Mayberry's travel to or administration of Crum's estate; rather, they grow from independent acts of withdrawing funds. Put it this way: Even if the Mayberrys had not traveled to Kentucky, Mark Mayberry could have still withdrawn funds from Crum's accounts through "electronic debits." Without something more that links the continuous travel to the continuous withdrawals, there is no way to know if the travel somehow enabled the electronic debits, if the withdrawals originated during Mark Mayberry's trips while his wife managed Crum's account, or if there is any other way to establish a nexus between the travel and the tort. *See Caesars*, 336 S.W.3d at 58–59 ("[T]he wrongful acts of the defendant . . . must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction."). Accordingly, the Court cannot find that any of Mayberry's bad acts "arises out of" his "persistent course" of travel to Kentucky in a manner that supports applying the long-arm statute. *See* Ky. Rev. Stat. § 454.210(2)(a)(4).

Crum makes one last attempt to trace his injuries to Mark Mayberry's Kentucky connections. In his second amended complaint, Crum alleged that Mark Mayberry engaged in a "persistent course of conduct" in Kentucky by making a threatening phone call. *See* R. 23 ¶¶ 55–59. Courts disregard events tending to establish a defendant's contacts with the forum that occur after the plaintiff files a complaint. *See* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.5 (3d ed. 2002). These incidences have no bearing on whether a defendant had fair warning that his activity may subject him to the jurisdiction of a foreign sovereign. *Burger King*, 471 U.S. at 472. Accordingly, post-

complaint activities do not support a decision to hold a defendant liable in court for actions that predate the complaint.

## CONCLUSION

Crum's complaint contains insufficient facts to make a prima facie showing that Mark Mayberry can be sued in Kentucky. Accordingly, it is **ORDERED** that the motion to dismiss defendant Mark Mayberry in his individual capacity for lack of personal jurisdiction, R. 25, is **GRANTED**.

This the 11th day of December, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge